CASE 46—PETITION ORDINARY—FEBRUARY 16.

# Dunn, &c., vs. Salter, &c.

**APPEAL FROM GARRARD CIRCUIT COURT.**

1. The concealment which will authorize an attachment under sub-division 5, of section 221, Civil Code, involves the intention of the debtor to obstruct his creditors in their legal remedies, which he may accomplish by secreting himself on his own premises, or by departing secretly from his residence to some other place in or out of the same county.

2. The court may order a sale of attached personal property, under section 239 of the Code, upon parol proof, and the correctness of such order will be presumed in the absence of anything showing the contrary.

3. By sections 253, 405 of the Code, the court is required to prescribe the credit on which real estate is to be sold, and has no power to fix a shorter credit than three months, for any part of the purchase money, nor a longer credit then twelve months for the whole. A sale for half the purchase, payable within less than a month, was erroneous and prejudicial to the debtor, and should be set aside by the court of appeals, although not excepted to in the circuit court, the debtor having been constructively summoned, and not having appeared.

J. A. ANDERSON, for appellants, cited *Civ. Code*, sec. 221; *Drake on Atta.*, secs. 48, 49, 51, 54, 62; *Civ. Code*, secs. 287, 288; 1 *Story's Eq.*, sec. 633; *Civ. Code*, sec. 260; *Session Acts* 1861-2, *p.* 92; 1 *Rev. Stat.*, 15, 16, *p.* 262; 4 *Litt.*, 35, 47; 17 *B. M.*, 176; 2 *Peters*, 413; 8 *Peters*, 110.

R. D. LUSK, on same side, cited *Civ. Code*, sec. 221; 2 *Rev. Stat.*, *p.* 140.

F. T. FOX, for appellees, cited 6 *Dana*, 289; 8 *B. M.*, 565; *Civ. Code*, secs. 243, 257, 286, 287.

R. M. BRADLEY, on same side, cited *Civ. Code*, secs. 239, 250; 4 *Litt.*, 268; 1 *Mon.*, 22; 4 *Mon.*, 544; 1 *Met.*, 652; 3 *J. J. M.*, 105.

A. J. JAMES, on same side, cited 3 *Met.*, 278; 1 *Mar.*, 354; *Civ. Code*, secs. 118, 287, 289.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

The appellee, Gabriel J. Salter, being the owner of a very valuable real and personal estate in the county of Garrard, where he resided, left his residence in the month of September, 1861.

At the time of his departure he was indebted, in the aggregate, in a very large amount to various persons. Within two months after he left a number of his creditors instituted proceedings, by attachments against his estate, nearly all of which were in quick succession levied upon the same property, which constituted very nearly the whole, if not the entire estate owned by him, and which has proved to be insufficient to pay his debts; in consequence of which, a controversy has arisen among the creditors concerning the validity of the proceedings and the priority of liens created by said attachments.

Prior to the 24th of February, 1864, the attached property

had been sold by commissioners; under orders of the Garrard circuit court, the several cases having been previously consolidated; but the rights of the creditors, and the manner of distributing the funds arising from these sales, had not been settled.

On that day the court below, after overruling the motions of many of the creditors to be permitted to file additional affidavits, setting forth other and additional grounds for attachments, adjudged that no grounds " had been made out by the proof for suing out any of the attachments prior to December, 1861; the attachments issued prior to that time having been based upon the allegations that the defendant,, Gabriel J. Salter, had been concealing himself, and absconding to avoid the service of process on him; and the proof showing that his absence was for an entirely different purpose, and that he did not conceal himself at all." The court was also " of opinion that the attachments sued out, and placed in the hands of the sheriff under the thirty days' law of December 23, 1861, have precedence in the succession in which they were sued out, and placed in the hands of the sheriff under that law ;" and thereupon adjudged that the debts of Tribble, Pigg, those due to. the banks for which Hall Anderson was bound to Hughes,. Craig, and Engleman, and to Thos. M. Johnson, should be paid, as here enumerated, out of the proceeds of said Salter's property ; and appointed George W. Dunlap a receiver to collect the money due from the purchasers; and,. after paying some commissions and costs to the persons named, and retaining $1,000 for his services, he was directed to pay the creditors aforesaid their debts. Of that judgment appellants complain.

The attachments of appellants, it is conceded, were sued out and levied prior to those of appellees, and the grounds for suing them out are, that Gabriel J. Salter so conceals himself and absconds that a summons cannot be served upon him;. being substantially the same as that stated in sub-div. 5 of sec. 221, Civil Code.

Whether the conclusion of the court below, that no grounds had been made out by the proof for suing out any of the at-, tachments prior to December, 1861, be correct,. is the first important question to be decided.

The concealment which will authorize and sustain an attachment under *sub-div.* 5, *supra*, involves the intention on the part of the debtor to delay or to prevent his creditors from enforcing their demands in the ordinary modes prescribed by law, by avoiding the service of their summons, which he may accomplish by secreting himself in his own house, or upon his own premises, or by departing secretly from his place of abode to a more secure spot, either in or out of the county of his residence where he can more certainly effectuate his purpose.

Such intentions are rarely avowed, and seldom susceptible of direct proof; consequently, their existence must often be established by the conduct of the debtor and other attendant facts.

Pettis proves that on the 18th of September, 1861, Salter told him he intended to leave home, and assigned as a reason for it that he was afraid he would be killed if he remained; but he did not tell him where he intended to go; and on that day, or the day after, he did leave. There is no proof that he was in any danger at home; that any hostile demonstrations had been made towards him in Garrard county, or that there had at any time even been a threat made against him; and, besides, he did not tell Pettis where he was going, or the probable length of his absence. The statement of his fears to remain at home is not worthy of credence.

It does not appear that Salter made this communication to any one else except Pettis, and Pettis does not seem to have told any one of Salter's intention to leave. It certainly was not known by his neighbors, and it is not shown that appellants had any information to that effect.

Where he went, or where he was from the time he left until a few days before the battle of Wild Cat, which was fought on the 21st of October, 1861 (as Miller proves), we are not informed. Shortly before that battle he wrote a letter to his wife from Prestonsburg, which Yantes saw, and in which he stated he expected soon to return home; but his place of sojourn, and his pursuits between those periods, are not explained.

Hardin proves he saw Salter for the last time on the day

after the battle of Wild Cat—perhaps in the county of Laurel; he was then with Zollicoffer's forces. Whether he continued with them is not certainly known; but the most rational conclusion is that he did, and was with them when appellants sued out their attachments. This course he would very naturally adopt, as being the most effectual means of concealing himself, and preventing the service of services upon him, as it was not at all probable that officers would seek him in such a place to execute process upon him.

We cannot concur with counsel for appellees that the concealment, to authorize an attachment, must be in the county of the residence of the debtor. The language of the section *supra* will not admit of such a construction.

Bills for large amounts, and for which Salter was bound as principal, were maturing about the time of his departure. He was heavily indebted otherwise, and is not shown to have been prepared with the means to meet these embarrassing demands. He was, doubtless, anxious to delay, and, if possible, to avert the financial ruin with which he was threatened; and in order to consummate that purpose, he determined to prevent the service of process upon him by secretly leaving home, and going to a place of concealment where he would be beyond the reach of disappointment. He only told Pettis he intended to leave; but did not tell him where he was going, and no one knew.

The foregoing facts proved by appellants, in our opinion, fully sustained their original grounds for their attachments, and the court below erred to their prejudice in adjudging against them. This conclusion renders it unnecessary to express any opinion upon the propriety of the action of the court below in overruling appellant's motions to file additional affidavits, as the judgment is reversed for the reasons stated.

Upon the subject of the mental condition of Thomas Salter, at the date of the bills of exchange, it is not proper for us to express any opinion, as there has been no adjudication of that question by the court below.

The objection of Salter, upon his cross-appeal, to the judgment of January, 1862, cannot avail him. By section 239,

Civil Code, the court below was authorized to sell the personal property other than the slaves, when, by reason of its perishable nature, or the cost of keeping it, a sale would be for the benefit of the parties. The evidence upon which the inferior courts act in relation to these sales is not required to be in writing, and incorporated in the record. The evidence adduced on the motion to sell the personal property in this case, we must presume, in the absence of anything to the contrary, fully authorized the sale.

We proceed now to the consideration of the propriety of the judgment for the sale of the land, omitting, for the present, at least, to notice *the very many other* objections urged by the attorney of Salter to the proceedings.

On the 20th day of February, 1863, a judgment was rendered for the sale of Salter's land, at his late residence, to the highest bidder, on a credit for one half of the sale money until the 20th of August thereafter, and for the other half until the 20th of February, 1864, possession to be given on the day of sale. From the report of the commissioner, it appears he advertised to sell on the 24th of March, 1863, but was prevented from making the sale on that day because of an invasion of the county by Confederate forces. He then advertised to sell on the 13th of May, 1863. For some reasons satisfactory to the commissioner, and which we need not notice, the sale was again postponed.

On the 26th of June, 1863, after the commissioner had reported his inability or failure to execute the order of sale, a supplemental order was made, directing the commissioner " to proceed with the execution of the former judgment rendered herein, to be governed in all respects as to his acts in making the sales therein ordered."

In obedience to this last order; the commissioner, as he reports, sold the land on the 25th of July, 1863, and took the bonds of the purchasers for the price thereof, one half due the 20th of August, 1863, and the other half due 20th of February, 1864. The first bond matured in less than one, and the second in less than seven months from the sale.

No time is fixed in the judgment for making the sale, as

required by section 253, Civil Code. That power is given to the commissioner, and the credit upon which the land will be sold is left wholly to his discretion. If he should determine to sell on the 19th of August, 1863, a credit of one day would be given for one half the purchase price, and of six months and one day for the other half.

By section 253, *supra*, courts ordering the sales of property are required to direct upon what notice, and at what time and place, such sales shall be made; and real estate shall be sold on a credit of *not less* than *three* nor more than twelve months. And by section 405, Civil Code, sales of real property *shall be* made on a credit of not less than three nor more than twelve months, or on installments equivalent to not more than twelve months' credit on the whole, *to be determined by the court*.

We think, by a rational construction of these two sections, the circuit judge should have directed in the judgment the credits upon which the land was to be sold, and that, in doing so, he had no power to fix a shorter credit than three months for any part of the purchase money, as he certainly could not extend the credit beyond twelve months for the whole.

The failure to observe these provisions of the Civil Code by the court below was certainly erroneous and prejudicial to Salter. The effect of this error on the sale presents the most perplexing question. If exceptions had been taken to the sale in the court below, it should have been set aside; but no exceptions were taken to it in that court, and it has been there ratified and confirmed, after which, as a general rule, purchasers are not affected by a reversal. In this case Salter was only constructively summoned, and did not appear; in consequence of which, as may be reasonably assumed, he could not except to the sale. The judgment does not conform to the law regulating the sales of real estate. It cannot be doubted that the land would have sold for more money than was realized by the sale, if it had been made on a credit of six and twelve months.

As the judgment must be reversed on Salter's cross-appeal for the reasons stated, the question as to the sufficiency of the affidavit made by Anderson, in regard to the insufficiency of the personalty to pay the debts, need not be decided.

· We cannot say, in the absence of any evidence on the subject, that the allowance to the commissioner, Dunlap, was excessive.

As to the house and lot attached in Lancaster by Brown, he is not an appellant, and Salter's cross-appeal only operates upon those who are *appellants;* nor can it operate upon his co-appellees. That case, therefore, is not before us.

The judgment, therefore, giving priority to the attachments of appellees, the banks, Anderson, Tribble, Pigg, Breck, Johnson, and Hughes, &c., over appellants, is reversed on the original appeal, and cause remanded, with directions for further proceedings consistent with this opinion. And the judgment for the sale of the lands is reversed on the cross-appeal of G. J. Salter, and the cause remanded for further proceedings, &c.